## WILLIS P. BAINBRIDGE

### *v.*

## HENRY ALLEN and AMANDA RICHMAN.

### [Decided August 22d, 1905.]

1. A plaintiff in attachment has a status to file a bill in chancery to set aside a fraudulent deed which impedes the operation of the lien of his attachment.

2. The decree in such a case will nullify the fraudulent deed only to the extent of the property attached.

3. A judgment in attachment in which the defendant does not appear in person or by attorney is enforceable only *in rem* upon the property levied on under the attachment.

On bill, answer, cross-bill and answer, &c.

The bill of complaint in this cause is filed by Willis P. Bainbridge, who at the time the bill was filed was plaintiff in attachment issued out of the supreme court of this state against one Henry Allen, a non-resident debtor. Under the attachment writs was seized the undivided one-eleventh interest of Henry Allen in twenty-nine and sixty-hundredths acres of land in Camden county, also in five and fifteen-hundredths acres in Cumber-

land county, excepting certain parts theretofore sold; also in the residue of moneys in the hands of the administrator of Jehu L. Allen, deceased, the father of Henry, which sum is appraised at $25.

The complainant alleges that the defendant Henry Allen, by a conveyance made October 12th, 1898, to his sister, the defendant Amanda Richman, without valuable consideration, planned to arrange and place the title to his property in the name and control of his sister, Amanda W. Richman, in order and with the intent that he might thereby hinder and prevent the application of said property to the payment of his debt or debts. With respect to this attached property the complainant prays that the conveyance so made by Henry to his sister, Amanda, may be declared to be fraudulent and void.

The complainant further alleges that the defendant Henry Allen became, by descent from his father, Jehu L. Allen, deceased, seized of an interest in certain lands situate in Salem, Camden and Cumberland counties, which were sold by a master of this court in partition proceedings, and that said master, under the aforementioned deed, has paid over said Henry's share to his sister, Amanda, to the amount of $2,600, or thereabouts, and that Amanda has transmitted that money to said Henry Allen; that said Amanda, under the pretended authority of said deed, has also collected from the administrator of said Jehu L. Allen, deceased, a large sum of money, $2,000 and upwards, which she has also forwarded to said defendant Henry Allen.

All these transfers and payments to said Henry Allen the complainant charges to have been made fraudulently to defeat and hinder his creditors in the collection of his debts, and to save and protect said property for the benefit of said Henry Allen himself.

The complainant further alleges that the master above named is about to sell in partition the residue of said lands and pay over the share of said Henry Allen therein to his sister, the defendant Amanda W. Richman.

The complainant makes defendants Henry Allen and Amanda W. Richman, and prays discovery touching the alleged fraudu-

lent deed and what moneys have been collected by Amanda thereunder, and what she now holds, and for whose use and benefit; that the said deed may be declared fraudulent and void as to the complainant, and may be canceled; or that Amanda may be declared a trustee for the complainant; or that the master may be ordered to pay complainant's claim out of the share of which Henry was seized in the lands by said master about to be sold, and for injunction restraining any further conveyance, &c., and for an order on the master to pay proceeds into court, &c., and for further relief.

A decree *pro confesso* was taken against both defendants. More than a year afterwards, at the instance of the defendant Amanda W. Richman, upon her paying costs and making immediate answer, it was opened as to her, and she was permitted to defend this suit.

The defendant Amanda W. Richman answered the bill of complaint. She denies that the defendant Henry Allen is indebted to the complainant; alleges that the transactions out of which the complainant claims such debt arose took place long after the deed of 1898 from Henry to her was made. She avers that Henry, by his deed made in 1898, conveyed his undivided interest in all the real estate which came to him from his father, Jehu L. Allen, for a valuable consideration, to wit, for $500, which Amanda says it was agreed between Henry and herself she should pay, and which she did pay, to the administrator of Jehu L. Allen's estate out of her own estate in payment of a balance found to be due from Henry to the other heirs on a compromise settlement between those heirs of Jehu L. Allen who had received advances and those who had not.

She admits that she received Henry's share of the partition sales, after deducting the sums retained to secure his wife's possible dower and to pay a judgment against Henry which was a lien on his share, but she denies that she sent the sum she received to Henry. On the contrary, she says she kept it.

She denies that Henry transferred his interest in his father's personalty to her, but admits she collected from his father's administrator quite a large sum under a power of attorney which

Henry gave her in 1900. In this money she said she had no interest.

She admits that the master has now sold the residue of the lands in the partition suit, and that one-eleventh thereof, amounting to $141.35, has been paid in to the clerk of this court on January 16th, 1902, and is now on deposit to the credit of the partition suit.

She denies that the lands attached or the moneys derived from the sale thereof were subject to any lien under said attachment against Henry. She alleges that the claim of the complainant against Henry arose more than a year after the deed of 1898 had been made to her, and that the complainant then had full notice of her ownership under that deed.

She denies that she has or ever had any moneys or property held for Henry's use, except that which she collected under his power of attorney and forwarded to him. She insists that in the real estate she has been and is the owner of Henry's interest, and as to his share of the personalty that she has not claimed it.

Henry Allen died in 1903 intestate, leaving one child, Laura P. Frost, wife of Ellis T. Frost. On March 31st, 1903, Mrs. Frost and her husband were admitted as defendants in this suit in the place of Henry Allen, deceased.

The new defendants filed an answer and cross-bill. They also attack the validity of the deed of 1898 made by Henry Allen (Mrs. Frost's father) to the defendant Amanda W. Richman.

The defendant Mrs. Richman moved to strike out the cross-bill in whole and in several parts. The defendant was partially successful on this motion, and Mrs. Frost filed an amended answer and cross-bill challenging the validity of the deed made in 1898 by Henry Allen to Mrs. Richman, because the lands attempted to be conveyed were not specifically described by metes and bounds, nor with relation to any township, city or county of their location, alleging also that the conveyance in question was in fact upon a trust between Mrs. Richman and Henry Allen, whereby Mrs. Richman undertook to account to Henry's heirs for the property received by her and to provide for the inchoate dower of Henry's wife; that Mrs. Richman had

admitted that she so received that deed, and that she claimed nothing thereunder for herself until after Henry's death. Mrs. Frost prays by her cross-bill for a decree that Mrs. Richman shall relinquish all claim to the property conveyed to her by Henry Allen.

The defendant Mrs. Richman answers, asserting the description of lands conveyed by the deed of 1898 to be sufficient in every particular. She denies any trust under that deed, and says it was absolute. She denies that she ever admitted that there was such a trust under that deed, and insists she was and is the absolute owner of the property by that deed conveyed.

On these issues this cause was tried.

*Mr. Isaac O. Acton,* for the complainant.

*Mr. John Meirs,* for the defendant Amanda W. Richman.

*Mr. Jonathan W. Acton,* for the defendant (cross-bill complainant) Laura Frost.

GREY, V. C.

The first question to be determined is whether the complainant, being a plaintiff in an attachment which has been levied, can lawfully file this bill in aid of the lien of his attachment.

This question is settled in favor of the complainant by the decision of the court of errors and appeals in the case of *Haston* v. *Castner, 31 N. J. Eq. (4 Stew.) 697,* where that court declared that the lien obtained by the levying of an attachment affords to the plaintiff in attachment the footing requisite to enable him to maintain a bill in equity to set aside a fraudulent deed which impedes the operation of the writ.

The next contention is as to the sufficiency of the description of the property in the deed of October, 1898, from Henry Allen to his sister, Amanda W. Richman. It is not necessary that the description of property conveyed by a deed shall define it by metes and bounds, or by reference to specific location, in order to pass title. If from all words in the deed the lands

intended to be conveyed can be identified, title to such lands will pass. In this deed the words of location used are: "All the interest of the said Henry Allen (the grantor) in and to the lands whereof his father, Jehu L. Allen, died seized, situate, lying and being in the State of New Jersey and the State of Delaware, wheresoever the same may be," &c. There would be no serious difficulty in ascertaining of what lands in New Jersey and Delaware Jehu L. Allen died seized. This case proves that, for in all the pleadings and proofs the lands affected by this deed have been readily located and ascertained. The deed does not fail for want of a sufficiently specific description.

The complainant contends that this deed was made without valuable consideration, in order to hinder the creditors of Henry Allen in the collection of just debts which he might owe. The defendant Amanda W. Richman insists in her answer that the deed was made to her absolutely for a valuable consideration, which she paid for Henry to the administrator of Jehu L. Allen's estate. The testimony clearly shows that Mrs. Richman's claim is false. One of those administrators testifies that Amanda never made any such payment to them. Mrs. Richman then attempted to shift her explanation of the payment of a valuable consideration for the deed of 1898 by testifying that in a settlement made between the heirs of Jehu L. Allen she was charged and had to pay $700 or more for Henry's debt. But her own testimony plainly shows that this also is a pretence, because she admits that this settlement was made several years after she took the deed from Henry, and that she did not know until the settlement was actually being presented to her that she would be asked to pay this debt of Henry's. In short, she allowed this to be charged against her, not because she had previously agreed with Henry that she would pay it as the consideration for the deed, but because the other heirs forced her to pay Henry's debt to the estate, she having, by the deed of 1898, taken title to Henry's share of the estate. Mrs. Richman's letters written after 1898 to Henry Allen, over a period of several years, show that (notwithstanding the deed conveyed to her an estate which was absolute on its face) she acknowledged that Henry

still had the right to direct what should be done with the property it conveyed, and even to pass it by his will, and always, in writing to Henry, spoke of it as "your share," never as her own.

The testimony satisfies me that Mrs. Richman neither paid nor agreed to pay any valuable consideration for the deed made to her by Henry Allen in October, 1898.

The next question is, Has this conveyance been shown to have been made with an intent to hinder and defeat the creditors of the grantor, Henry Allen?

The evidence shows that at the time the deed was made in 1898 Henry Allen was in debt. A judgment in favor of one McAlister had been entered against him. He was considerably otherwise indebted, and suits were feared. He had gone to California. His sister was in Salem county. The estate of his father was located in New Jersey and Delaware, and an undivided interest had descended to Henry. He was obviously afraid that his creditors might seize it, to his disadvantage. His sister, Mrs. Richman, has shown in this case that she was ready to help him conceal his real interest in the property. The plan is plainly proven to have been that. Mrs. Richman should hold the absolute title to the property conveyed, but that Henry should continue to have the control and disposal of it. Such a transaction was clearly obnoxious to the statute of frauds as a conveyance which hindered and prevented creditors from collecting their claims, and tainted by the presence of an actual intent to defraud creditors.

The defendant objects that at the time the deed was made, the claim of the present complainant, Bainbridge, had not yet come into existence, and that the deed of 1898 was therefore not made in fraud of the complainant's claim.

This point does not relieve the disputed deed from the operation of the statute of frauds. It simply alters the character of the proof which must appear in order that the statute shall be applicable. The law presumes that all conveyances made by a debtor without valuable consideration are fraudulent, with relation to the claims of existing creditors of that debtor.

This presumption will, in such cases, arise as a conclusion of

law without any proof that there was in fact an intent to defraud creditors in making the conveyance of the debtor's property.

If a creditor seeks to impugn a conveyance made by his debtor before the claim of the creditor came into existence, it is incumbent on the creditor to make proof that the challenged conveyance of the debtor's property was made pursuant to an actual intention to defeat and hinder his creditors from collecting their claims from him.

In this case, upon all the evidence submitted, I am satisfied that the deed of 1898 was made with an actual purpose to hinder and delay Henry Allen's creditors in the collection of their claims against him, and that the defendant Mrs. Richman participated in the fraudulent purpose.

This finding entitles the complainant in this suit to a decree declaring the deed of 1898 to be null and void so far as it may affect the title of the property attached.

This result necessarily defeats the claim of Mrs. Frost in her cross-bill to the effect that the deed of 1898 was in fact a trust deed, &c., for Henry Allen's benefit, descending to her as the heir-at-law of Henry Allen.

A fraudulent conveyance is good as between the grantor and the grantee. The heirs of the grantor who take by descent are volunteers. They cannot successfully demand that their father's fraudulent conveyance shall be set aside for their benefit.

The proceedings in the complainant's attachment have been prosecuted to final judgment during the pendency of this suit. This judgment is wholly *in rem* against the specific property levied upon in the attachment suit, and not *in personam*, a general judgment to be made from any property of the defendant wheresoever found.

There was no appearance in the attachment suit by the defendant Henry Allen, either in person or by attorney. The decree in this case must therefore be limited to the nullification of the deed of 1898 so far only as it affects the property attached.

The complainant, though claiming under an attachment, a proceeding *in rem* which did not affect all of the defendant's

property, yet seeks by this bill to give to that attachment the force of a general judgment *in personam,* binding generally all the property of the defendant, whether levied on under the attachment or not.

The complainant is not entitled in this suit to such extensive relief.

The rule is entirely well established that, in order to support a bill of complaint of that character, the complainant must show that he has, at the time of filing his bill, a lien against the specific property of the defendant, with respect to which he seeks the favoring decree of this court. *Haston* v. *Castner* (at *p. 699*). In the case at bar the only lien which the defendant had when he filed this bill was the lien obtained by the levying of the attachment.

When this suit was begun Henry Allen was alive, and was made a party. Subsequently to the initiation of this suit the defendant Henry Allen departed this life. Neither the complainant's bill of complaint nor any other of the proceedings in this cause have been framed or remodeled, as to parties, allegation, charge, prayer or proofs, to assert any rights in Henry Allen's estate in the hands of his heirs or administrators. The decision in *Haston* v. *Castner, ubi supra,* holding that unadjudicated claims against the lands of deceased debtors are such liens that they may be the basis of a suit in equity cannot be applied to this case.

The result is that the complainant is entitled to a decree as above indicated, with costs.

The cross-bill of Mrs. Frost should be dismissed, but without costs.